IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

```
-----------------------------------------------x
BERNHARD FORTMANN, by his         :
Conservator JAMES M. RUBINO       :     3:10 CV 1562 (JBA)
                                  :
v.                                :
                                  :
MICHAEL P. STARKOWSKI,            :     DATE: JANUARY 13, 2011
COMMISSIONER, CONNECTICUT         :
DEPARTMENT OF SOCIAL SERVICES     :
-----------------------------------------------x
```

## RECOMMENDED RULING ON PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Plaintiff Bernhard Fortmann, by his conservator, James M. Rubino, commenced this action on October 4, 2010 against defendant Michael P. Starkowski, the Commissioner of the Connecticut Department of Social Services ["DSS"]. (Dkt. #1). In his complaint, plaintiff seeks declaratory and injunctive relief against defendant because of DSS decisions denying plaintiff Medicaid on the basis of his wife's resources even though plaintiff's right to support against his wife under CONN. GEN. STAT. § 46b-215(a)(1)[1] was assigned to DSS by his Conservator, he lacked the ability to assign such rights himself due to mental impairment, and his wife refused to make any of her resources available for plaintiff's care. (Dkt. #1). Plaintiff asserts that the policy of ignoring assignment of support rights under § 46b-215 violates 42 U.S.C. § 1396r-5(c)(3).[2] (Id.).

---

[1]CONN. GEN. STAT. § 46b-215(a)(1) reads, in relevant part: "The Superior Court or a family support magistrate may make and enforce orders for payment of support against any person who neglects or refuses to furnish necessary support to such person's spouse . . . ."

[2]The assignment of support rights provision articulated in 42 U.S.C. § 1396r-5(c)(3) reads:

> The institutionalized spouse shall not be ineligible by reason of resources determined under paragraph (2) to be available for the cost of care where--
>
> (A) the institutionalized spouse has assigned to the State any rights to support from the community spouse;
>
> (B) the institutionalized spouse lacks the ability to execute an assignment

Nine days after plaintiff filed his complaint, he filed the pending Motion for Preliminary Injunction, with affidavit and brief in support.[3] (Dkts. ##10-12). On October 20, 2010, plaintiff filed a Motion for Hearing on his pending motion. (Dkt. #16). Defendant filed his brief in opposition to plaintiff's Motion for Preliminary Injunction on November 3, 2010. (Dkt. #19).[4] Nine days later, plaintiff filed a reply brief. (Dkt. #21). On October 29, 2010, United States District Judge Janet Bond Arterton referred these Motions to this Magistrate Judge, and on November 19, 2010, this Magistrate Judge held a telephonic status conference regarding the pending Motions. (Dkts. ##17, 19, 25). On December 9, 2010, plaintiff filed an affidavit in which he avers that he filed a Medicaid application on December 8, 2010, and that he filed with DSS a separate written assignment of his spousal rights to DSS. (Dkt.

---

due to physical or mental impairment but the State has the right to bring a support proceeding against a community spouse without such assignment; or

(C) the State determines that denial of eligibility would work an undue hardship.

[3]Attached to plaintiff's affidavit (Dkt. #11) is a copy of the Decree Appointment of Conservator, dated February 6, 2009 (Exh. A); copy of Notice of Decision issued by the Office of Legal Counsel of DSS, in which DSS' denial of plaintiff's request for Medicaid was upheld, dated August 9, 2010 (Exh. B); copy of correspondence from plaintiff's conservator to the trustee of plaintiff's Estate, dated January 29, 2010 (Exh. C); copy of correspondence from plaintiff's wife's counsel to plaintiff's conservator, dated February 2, 2010 (Exh. D); and copy of correspondence from the trustee of The Bernhard G. Fortmann Irrevocable Terminable Interest Property Trust and The Bernhard G. Fortmann Irrevocable Credit Shelter Trust ["plaintiff's Trusts"] to plaintiff's conservator, dated February 2, 2010. (Exh. E).

[4]Attached to defendant's brief (Dkt. #18) are the following exhibits: copies of excerpts of the Connecticut Department of Income Maintenance Uniform Policy Manual ["UPM"] § 0500, Glossary, dated November 1, 1989 (Exh. 1); UPM § 4022.05, Community Spouse Disregard, dated January 7, 2009 and March 15, 2006 (Exh. 2); UPM § 5035.30 Community Spouse Allowance, dated February 13, 2001 and January 1, 2006 (Exh. 3); UPM § 1570.25, Hearing Procedures, dated October 1, 1989, February 13, 2001, October 1, 2003, and February 1, 1997 respectively (Exh. 4); and copy of excerpts from transcript from plaintiff's administrative hearing, held on April 1, 2010 (Exh. 5).

#26).[5]  On December 22, 2010, plaintiff filed an amended complaint, in which he alleges that he has a pending subsequent application for Medicaid and he has submitted to DSS a written assignment of support rights that plaintiff has against his wife under CONN. GEN. STAT. § 46b-215, the doctrine of necessaries, and the law of New Jersey where the plaintiff's wife resides. (Dkt. #28).[6]

For the reasons stated below, plaintiff's Motion for Preliminary Injunction (Dkt. #10) is granted in part, and plaintiff's Motion for Hearing (Dkt. #16) is denied.

## I. FACTUAL BACKGROUND

On June 10, 2005, plaintiff was admitted to the Smith House Health Care Center ["the nursing home"]. (Dkt. #11, ¶ 1). Plaintiff, through his son and attorney in fact, submitted his initial application for Medicaid benefits on June 12, 2005, and that application was denied on April 24, 2006. (Id.). Plaintiff did not appeal that denial. (Id.). On February 6, 2009, plaintiff's Conservator was appointed by the Stamford Probate Court and on March 11, 2009, plaintiff, through his Conservator, filed a second Medicaid application, which was denied on December 11, 2009 on grounds that his wife, from whom plaintiff has been separated for eleven years, has assets in excess of the $111,160 they were allowed in order for plaintiff to be eligible for Medicaid. (Id. ¶¶ 3,5, 7; see Dkt. #28, ¶¶ 3, 5-6 & Exh. A).

The Medicare Catastrophic Coverage Act of 1988 ["MCCA"], codified at 42 U.S.C. § 1396r-5, governs the extent to which a community spouse's assets may factor into an

---

[5] Attached to plaintiff's affidavit is a copy of the Medicaid application, signed December 6, 2010 by plaintiff's conservator; additional copies of correspondence, dated February 2, 2010; and copy of Assignment of Support Rights by plaintiff's conservator, dated December 7, 2010.

[6] Attached to plaintiff's amended complaint are the following exhibits: another copy of the Decree Appointment of Conservator; another copy of the Notice of Decision issued by DSS' Office of Legal Counsel; and additional copies of the January 29, February 2, and December 7, 2010 letters.

institutionalized spouse's eligibility for Medicaid.[7] Plaintiff's wife is entitled to retain a Community Spouse Resource Allowance ["CSRA"], or as it is referred to in Connecticut, a Community Spouse Protected Amount ["CSPA"] of $109,560; any amount in excess of this would make plaintiff ineligible for Medicaid. (Dkt. #11, ¶ 6; see Dkt. #28, ¶ 7).

An administrative Fair Hearing was held by DSS on April 1, 2010 and on August 9, 2010, DSS issued a Notice of Decision upholding the denial of Medicaid to plaintiff because of those excess resources. (Dkt. #11, ¶ 8 & Exh. B; see Dkt. #28, ¶ 9 & Exh. B). A demand was made by plaintiff on the trustee of The Bernhard G. Fortmann Irrevocable Terminable Interest Property Trust and The Bernhard G. Fortmann Irrevocable Credit Shelter Trust ["plaintiff's Trusts"] (Dkt. #11, ¶ 9 & Exh. C; see Dkt. #28, ¶ 10 & Exh. C), and by letters dated February 2, 2010, plaintiff was informed that the trust assets would not be used to pay for plaintiff's nursing home care. (Dkt. #11, ¶ 10 & Exh. D; see Dkt. #28, ¶ 11 & Exh. D). In the Notice of Decision upholding the denial of Medicaid benefits to plaintiff, DSS stated that there was "no merit in counsel's argument that the assets are not accessible to [plaintiff]. The record reflects that the assets are accessible to the community spouse [and] [t]he fact that she chooses not to access the assets does not make them inaccessible." (Dkt. #11, ¶ 11 & Exh. B, at 7; see Dkt. #28, ¶ 12 & Exh. B, at 7). As stated above, on December 8, 2010, plaintiff filed a new application for Medicaid benefits with DSS, along with a separate written assignment of plaintiff's support rights. (Dkt. #26 & Exhs.; Dkt. #28, ¶ 13 & Exh. E).

---

[7]Under the Medicaid program, plaintiff is considered an "institutionalized spouse," see 42 U.S.C. § 1396r-5(h)(1), and his wife is considered a "community spouse." See 42 U.S.C. § 1396r-5(h)(2).

## II. DISCUSSION

The assignment of support rights provision articulated in 42 U.S.C. § 1396r-5(c)(3) provides that an institutionalized spouse, such as plaintiff in this case,[8] shall not be ineligible for Medicaid because of excessive resources of a community spouse, such as plaintiff's wife in this case,[9] if "the institutionalized spouse has assigned to the State any rights to support from the community spouse[,]" or where the "institutionalized spouse lacks the ability to execute an assignment due to physical or mental impairment but the State has the right to bring a support proceeding against a community spouse without such assignment . . . ." Further, in Connecticut, pursuant to CONN. GEN. STAT. § 46b-215(a)(1): "The Superior Court or a family support magistrate may make and enforce orders for payment of support against any person who neglects or refuses to furnish necessary support to such person's spouse . . . ."[10]

Plaintiff asserts that the statutory doctrine of "spousal refusal," 42 U.S.C. § 1396r-5(c)(3), recognized in <u>Morenz v. Wilson-Coker</u>, 321 F. Supp. 2d 398 (D. Conn. 2004), aff'd, 415 F.3d 230 (2d Cir. 2005), prohibits DSS from counting his wife's resources because his support rights against his wife can be enforced by the State under CONN. GEN. STAT. § 46b-215 or the doctrine of necessaries, because federal law and regulations pre-empt limitations on assignments in spousal refusal cases, and because his mental impairment prevents him from assigning those rights directly. (Dkt. #11, ¶ 12). Accordingly, plaintiff seeks a

---

[8]<u>See</u> note 7 <u>supra.</u>

[9]<u>See</u> note 7 <u>supra.</u>

[10]CONN. GEN. STAT. § 46b-215(b) provides that "The Attorney General of the state of Connecticut . . . shall become a party for the interest of the state of Connecticut . . ., in any proceedings for support which concerns any person who is receiving or has received public assistance or care from the state . . . . "

preliminary injunction enjoining defendant from denying Medicaid eligibility to plaintiff. (Dkt. #10). Plaintiff contends that he will suffer irreparable injury; he has assigned his support rights under CONN. GEN. STAT. § 46b-215(a)(1); he assigned his support rights under the doctrine of necessaries; and the limitation on assignment of support rights in CONN. GEN. STAT. § 17b-285 is pre-empted. (Dkt. #12, at 6-11).

In response, defendant contends that plaintiff has not demonstrated that he is likely to suffer "imminent and uncompensable harm if the Court denies the present motion," as at the time of the briefing of plaintiff's motion, defendant's opposition, and plaintiff's reply brief, plaintiff did not have a pending Medicaid application, the denial of which such an injunction could prevent, and while plaintiff claims he will suffer irreparable harm should the Court fail to act now because he can only be awarded benefits retroactive to three months preceding the date of the Court's judgment, Connecticut courts can award plaintiff retroactive relief through fair hearing and judicial review procedures. (Dkt. #18, at 13-16, 20). Additionally, defendant argues that plaintiff is "mistaken" in his contention that should he be hospitalized, he would not be admitted to a nursing home upon discharge, because plaintiff can compel his spouse under New Jersey law to make funds available for that purpose, and his current nursing home would be required to readmit him and the nursing home, as a creditor, can compel plaintiff's spouse through New Jersey courts to pay his debts to the nursing home. (Id. at 16-18).[11] Further, according to defendant, plaintiff has not demonstrated a probability

---

[11]Defendant also contends that to the extent plaintiff seeks to adjudicate the propriety of the fair hearing decision on his 2009 Medicaid application, plaintiff must exhaust all available state appellate remedies and this Court should abstain from exercising jurisdiction in this case to the extent that it is, in effect, an appeal of the decision upholding the denial of his 2009 application. (Dkt. #18, at 18-19). As stated above, plaintiff now has a pending application for Medicaid benefits which has slightly altered the landscape of the pending Motion for Preliminary Injunction. Plaintiff seeks to enjoin the State from denying the pending application in which plaintiff has also executed a written assignment of support rights.

6

of success on the merits; plaintiff's reliance on Morenz is misplaced; plaintiff is not eligible to assign spousal support rights in Connecticut; plaintiff does not qualify for eligibility under § 1396r-5(c)(3) based on an inability to execute an assignment as DSS lacks the power under state law to bring a support action in plaintiff's circumstances; federal law does not preempt state limitations on assignments; plaintiff is not eligible based on hardship; the balance of harms tip in the State's favor; and the Court should abstain from exercising jurisdiction or, at the least, certify state law issues to the Connecticut Supreme Court. (Dkt. #18, at 21-40).

---

Furthermore, contrary to defendant's position, plaintiff is not required to exhaust state remedies to bring his § 1983 action in this Court. Roach v. Morse, 440 F.3d 53, 56 (2d Cir. 2006), citing Patsy v. Bd. of Regents, 457 U.S. 496, 516 (1982). In Roach, the Second Circuit explained:

> [E]xhaustion is necessary only where Congress specifically requires it, either explicitly or implicitly. See Heck v. Humphrey, 512 U.S. 477, 483, 114 S. Ct. 2364, 129 L. Ed.2d 383 (1994); Doe v. Pfrommer, 148 F.3d 73, 78 (2d Cir.1998)("Patsy's categorical statement that exhaustion is not required and the expansive view of federal courts in protecting constitutional rights allow plaintiffs to seek relief under § 1983 without first resorting to state administrative procedures.")(citing DeSario v. Thomas, 139 F.3d 80, 85-86 (2d Cir.1998), vacated on other grounds sub nom. Slekis v. Thomas, 525 U.S. 1098, 119 S. Ct. 864, 142 L. Ed.2d 767 (1999)). The Medicaid Act does not explicitly require exhaustion of state administrative remedies
> . . . .
> . . .
> Because § 1983 is intended to provide a federal forum, however, there will almost always be "some sort of administrative or judicial avenue of relief at state law-whether compelled by federal statute or simply available under general state court jurisdiction." Alacare, Inc.-North v. Baggiano, 785 F.2d 963, 967-68 (11th Cir.1986). We have thus held that a congressional requirement that states establish administrative review procedures does not imply that § 1983 plaintiffs need exhaust them. See, e.g., Pfrommer, 148 F.3d at 78; see also Houghton ex. rel Houghton v. Reinertson, 382 F.3d 1162, 1167 n. 3 (10th Cir.2004) (holding that a § 1983 plaintiff need not exhaust state administrative remedies prior to bringing a claim under the Medicaid Act); Alacare, Inc.-North, 785 F.2d at 970 (same); Talbot v. Lucy Corr Nursing Home, 118 F.3d 215, 220 (4th Cir.1997) (finding that § 1983 plaintiffs are not required to exhaust state remedies under the Medicare Act pursuant to the reasoning of Alacare).

440 F.3d at 56-57 (footnote omitted).

A. PRELIMINARY INJUNCTION STANDARD[12]

"A preliminary injunction is an extraordinary and drastic remedy [that] is never awarded as of right." Munaf v. Geren, 553 U.S. 674, 689-90 (2008)(citation & quotations omitted). The Second Circuit has "recognized two separate standards for whether a district court may grant a preliminary injunction":

> In general, the district court may grant a preliminary injunction if the moving party establishes (1) irreparable harm and (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party.

Lynch v. City of New York, 589 F.3d 94, 98 (2d Cir.2009), citing Plaza Health Labs., Inc. v. Perales, 878 F.2d 577, 580 (2d Cir .1989)(citations omitted).  Additionally, in a case in which the

> moving party seeks to stay governmental action taken in the public interest pursuant to a statutory or regulatory scheme, the district court should not apply the less rigorous fair-ground-for-litigation standard and should not grant the injunction unless the moving party establishes, along with irreparable injury, a likelihood that he will succeed on the merits of his claim.

Lynch, 589 F.3d at 98, citing Plaza Health, 878 F.2d at 580 (citations & emphasis omitted). Such is the case here, where the moving party seeks to "stay action by the State of Connecticut under Medicaid regulations." See Conn. Ass'n of Healthcare Facilities, Inc. v. Rell, No. 10-2237-CV, 2010 WL 3894794, at *1 (2d Cir. Oct. 6, 2010).

---

[12]While plaintiff invites this Court to convert this motion to one for summary judgment pursuant to Fed. R. Civ. P. 65(a)(1)(see Dkt. #12, at 2) , the Court will focus this ruling on whether a preliminary injunction shall enter.  Defendant sought and Judge Arterton granted a pre-filing conference for defendant's Motion to Dismiss, which conference was held on December 21, 2010.  (Dkts. ##20, 23, 29).  Judge Arterton has extended plaintiff's 26(f) Planning Report deadline to seven days after this Recommended Ruling is filed, and any amended pleadings were to be filed by January 3, 2011.  (Dkt. #29).  As stated above, plaintiff filed his amended complaint on December 22, 2010. (Dkt. #28).

1. IRREPARABLE HARM

Defendant posits that a preliminary injunction is unwarranted because plaintiff does not stand to suffer harm should such an injunction not issue as plaintiff, as of the time defendant's brief in opposition was filed, did not have a pending Medicaid application, the denial of which an injunction could prevent. (Dkt. #18, at 14). As discussed above, on or about December 8, 2010, plaintiff filed another application for Medicaid benefits, along with a separate written assignment of plaintiff's support rights. Plaintiff, who has already been denied benefits and faces imminent harm of being denied benefits under his current application, has made a sufficient showing of irreparable harm, as the denial of Medicaid benefits has been recognized as per se irreparable injury.[13] See Beltran v. Myers, 677 F.2d 1317, 1322 (9th Cir. 1982)(sufficient showing of irreparable injury when enforcement of a state's more restrictive transfer of assets rule resulted in a denial of Medicaid benefits and may result in a denial of needed medical care); Mass. Ass'n of Older Americans v. Sharp, 700 F.2d 749, 753 (1st Cir. 1983). Furthermore, irreparable injury analysis requires the party seeking injunctive relief to show that there exists no adequate remedy at law. Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc., 596 F.2d 70, 72 (2d Cir. 1979)(citation omitted)(irreparable injury means injury for which a monetary award cannot be adequate compensation). Unpaid nursing home bills, the potential loss of medical assistance at the nursing home, and poor health that plaintiff may suffer in the absence of care, cannot be addressed by a promise of future Medicaid coverage, particularly when the Eleventh Amendment Immunity substantially limits an award of monetary damages against defendant. Morenz v. Wilson-Coker, 415 F.3d

---

[13] Defendant is correct, however, that preliminary injunctive relief must be narrowly drawn, and to the extent that plaintiff seeks to invalidate the state statute as clarified by the Connecticut legislature after the Morenz decision, plaintiff is seeking more relief at this preliminary stage than is required to prevent irreparable injury. (Dkt. #18, at 19-21).

230, 237 (2d Cir. 2005)(in Medicaid eligibility cases, a person may be found eligible for Medicaid benefits starting three months prior to the month of application).

## 2. LIKELIHOOD OF SUCCESS ON THE MERITS

Plaintiff has satisfied his burden of establishing a likelihood of success on the merits. Pursuant to 42 U.S.C. § 1396k, a State Plan for Medicaid must require, as a condition of eligibility, that an individual who has the legal capacity to execute an assignment, must assign to the State any rights to support and to payment for medical care from a third party. See 42 U.S.C. § 1396a(a)(45). 42 C.F.R. §§ 433.145(a)(1) and 435.610(a)(1) implement this statutory mandate by requiring that a State Plan for Medicaid must require a legally able Medicaid applicant to assign to the Medicaid agency his rights to medical support and to payment for medical care from any third party. DSS Uniform Policy Manual ["UPM"] § 3515.10A requires that as a condition of eligibility, a Medicaid applicant must assign to DSS his rights to past, present and future support from legally responsible relatives, and UPM § 3515.10B provides that assignment of support rights applies if at least one legally liable relative of an assistance unit is absent from the home. Pursuant to UPM § 3515.10C, subject to the exception in UPM § 3515.10D, assignment is complete upon the signature on the application for assistance. However, § 3515.10D provides that in Medicaid long-term care cases, as in the case here, the assignment of spousal support rights pursuant to section 17b-285 of the general statutes and in undue hardship situations, assignment is accomplished by more than the signature on the application, it is accomplished by a separate assignment and is only effective upon receipt by DSS.

Judge Underhill held in Morenz that CONN. GEN. STAT. § 46b-215(a)(1) "appears to authorize the State to initiate the proceedings against any person or persons liable for

support payments." Morenz, 321 F. Supp. 2d at 406. As Judge Underhill stated, "once assignment and spousal refusal have occurred, . . . the state of Connecticut would pursue [the community spouse]; the State will press [the community spouse] to pay support, having refused (via the spousal refusal document) to provide necessary support for her spouse." Id.

The Second Circuit, upholding Judge Underhill's decision, held that if, under 42 U.S.C. § 1396r-5(c)(3),[14] an institutionalized spouse assigns rights to support from the community spouse to the State of Connecticut, the institutionalized spouse "'shall not be ineligible' for Medicaid because of excess resources." 415 F.3d at 234, quoting Morenz, 321 F. Supp. 2d at 403. The Second Circuit continued: "A community spouse's resources cannot be included in making an institutionalized spouse's initial eligibility determination if the institutionalized spouse has assigned support rights to the state or undue hardship is present." Id. at 234 (emphasis in original). The Second Circuit then looked to CONN. GEN. STAT. § 17b-285 to determine whether a particular assignment of support rights is valid, as such a determination is a question of state law. Id. at 235. Under Connecticut law,

> An institutionalized person or person in need of institutional care who applies for Medicaid shall assign to the Commissioner of Social Services the right of support derived from the assets of the spouse of such person, provided the spouse of such person is unwilling or unable to provide the information necessary to determine eligibility for Medicaid. If such applicant lacks the ability to execute an assignment due to physical or mental impairment, the commissioner may bring a support proceeding against such applicant's spouse without such assignment.

CONN. GEN. STAT. § 17b-285. Acknowledging the use of the word "shall," which by its terms does not limit the circumstances in which an "institutionalized applicant may assign support rights," and acknowledging that this interpretation is consistent with DSS' own UPM §

---

[14]See note 2 supra.

7520.07,[15] the Second Circuit concluded that the assignment of spousal support under Connecticut law "nowhere forbids or invalidates . . . an assignment" in circumstances other than those articulated in § 17b-285. Morenz, 415 F.3d at 236 (emphasis in original).

In response to Morenz, § 17b-285[16] was amended to provide that "Notwithstanding any provisions of the general statutes, an institutionalized person or person in need of institutional care who applies for Medicaid may assign to the Commissioner of Social Services the right of support derived from the assets of the community spouse of such person but only if" the institutionalized spouse cannot locate the community spouse, or the community spouse is unable to provide information regarding his or her own assets, or the institutionalized spouse lacks the ability to execute an assignment due to physical or mental impairment. This limitation on statutory support rights exists "[n]otwithstanding any provision of the general statutes," and does not apply to DSS' right to seek support under § 46b-215, as such section is silent on the issue of assignment. Applying the "plain meaning" rule of statutory

---

[15]§ 7520.07 provides that "[t]he applicant of Medicaid benefits must assign to the Department rights to support available from the assets of the community spouse when the community spouse is unable to provide the information necessary to complete an assessment of spousal assets." UPM § 7520.07 (emphasis added).

[16]CONN. GEN. STAT. § 17b-285 now reads in full:

> Notwithstanding any provision of the general statutes, an institutionalized person or person in need of institutional care who applies for Medicaid may assign to the Commissioner of Social Services the right of support derived from the assets of the community spouse of such person but only if (1) the assets of the institutionalized person or person in need of institutional care do not exceed the Medicaid program asset limit; and (2) the institutionalized person or person in need of institutional care cannot locate the community spouse; or the community spouse is unable to provide information regarding his or her own assets. If such assignment is made or if the institutionalized person or person in need of institutional care lacks the ability to execute such an assignment due to physical or mental impairment, the commissioner may seek recovery of any medical assistance paid on behalf of the institutionalized person or person in need of institutional care up to the amount of the community spouse's assets that are in excess of the community spouse protected amount as of the initial month of Medicaid eligibility.

interpretation, Morenz, 415 F.3d at 236, the explicit statutory language controls over legislative intent.[17]

In addition to the foregoing, the balance of hardships tip in the favor of plaintiff over the State, as the issuance of a denial of benefits to plaintiff will result in irreparable harm to plaintiff while defendant is left to deal with, as described by Judge Underhill in Morenz, the familiar "pay and chase" system this situation creates whereby the "State must expend scarce community resources pursing funding from community spouses whose resources exceed the Medicaid threshold." Morenz, 321 F. Supp. 2d at 407. The alternative is to place the burden on plaintiff to "chase" the community spouse through litigation when plaintiff does not have the means to pay his nursing home bills, let alone to fund expensive litigation.

In light of the holding in Morenz, and Connecticut's application of the "plain meaning rule" of statutory interpretation, and the consistency of such interpretation with DSS' own UPM, plaintiff has satisfied his burden of establishing a likelihood of success on the merits such that a preliminary injunction shall enter.

---

[17]Plaintiff also asserts that the limitation in § 17b-285, which only applies to support rights in statutes providing for their assignment ("Notwithstanding any provision of the general statutes"), does not apply to support rights that exist at common law. Pursuant to the doctrine of necessaries, there exists a common law duty of support that can be asserted by wives against their husbands, but Connecticut has not modified the rule to apply to the reverse situation. See Jewish Home for Aged, Inc. v. Nuterangelo, No. CV 040489608S, 2004 WL 3130225, at *1 (Conn. Super. Ct. Dec. 10, 2004). Plaintiff urges this Court to decide this question of state law by considering decisions in other jurisdictions on the same and analogous issues. (Dkt. #12, at 9).

Additionally, plaintiff contends that federal law pre-empts the limitation on assignment of support rights in CONN. GEN. STAT. § 17b-285 (Dkt. #12, at 10-11), and defendant posits several additional arguments referenced above. In light of the conclusion above, at this preliminary stage of this case, the Court need not address these remaining issues.

Further, in his brief in opposition, defendant contends that plaintiff's arguments are in error as plaintiff "has never specifically assigned his spousal support right to the state and has never sought eligibility on that basis." (Dkt. #18, at 23, 26). However, after briefing on plaintiff's Motion was complete, plaintiff filed an affidavit in which he averred that he submitted a new application for Medicaid benefits and submitted a separate written assignment.

## II. CONCLUSION

For the reasons stated above, plaintiff's Motion for Preliminary Injunction (Dkt. #10) is <u>granted in part</u> and plaintiff's Motion for Hearing (Dkt. #16) is <u>denied</u>. As this Court has found in Section II.A.1 <u>supra</u>, plaintiff faces imminent and irreparable harm of being denied benefits under his application filed on or about December 8, 2010. Accordingly, a preliminary injunction shall enter, preserving the <u>status quo</u>, until a decision is reached on the underlying substantive issues.

<u>See</u> 28 U.S.C. § 636(b)**(written objections to ruling must be filed within fourteen days after service of same);** FED. R. CIV. P. 6(a), 6(e) & 72; Rule 72.2 of the Local Rules for United States Magistrate Judges, United States District Court for the District of Connecticut; <u>Small v. Secretary, H&HS</u>, 892 F.2d. 15, 16 (2d Cir. 1989)**(failure to file timely objection to Magistrate Judge's recommended ruling may preclude further appeal to Second Circuit).**

Dated this 13th day of January, 2011, at New Haven, Connecticut.

          /s/ Joan G. Margolis, USMJ
     Joan Glazer Margolis
     United States Magistrate Judge