UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| BERNHARD FORTMANN, by his Conservator JAMES M. RUBINO, *Plaintiff*, | Civil No. 3:10CV1562 (JBA) |
| *v.* | |
| MICHAEL P. STARKOWSKI, COMMISSIONER, CONNECTICUT DEP'T OF SOCIAL SERVS. *Defendant*. | July 31, 2013 |

**RULING ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Plaintiff Bernhard Fortmann filed suit against Connecticut's Department of Social Services ("DSS") seeking declaratory and injunctive relief from DSS's decision to deny him eligibility for Medicaid on the basis of his wife's resources. In September 2011, this Court granted Plaintiff's request for a preliminary injunction. (Ruling on Objections to Rec. Ruling [Doc. # 41] at 11.) Both parties now move for summary judgment, representing that there are no factual disputes and that the issue of whether Plaintiff is entitled to an eligibility determination without consideration of his wife's resources as a "community spouse" is purely a question of law. Mr. Fortmann passed away on June 4, 2012 at the age of ninety-eight, and his Conservator, James Rubino, has been substituted as Plaintiff in this action. For the reasons that follow, Defendant's motion [Doc. # 50] is GRANTED and Plaintiff's cross-motion [Doc. # 46] is DENIED.

## I. Factual Summary

Until his death, Mr. Fortmann lived at Smith House Health Care in Stamford, Connecticut. On March 11, 2009, his conservator James Rubino applied on his behalf to DSS for help with paying his expenses under the Medicaid program. Plaintiff meets the

statutory definition of "institutionalized spouse," and Mrs. Fortmann meets the definition of "community spouse" as defined in 42 U.S.C. § 1396r-5(h). DSS denied his application because it determined that the combined total of both Mr. and Mrs. Fortmann's non–exempt assets was in excess of the "Community Spouse Protected Amount" of $109,560.00, which is the maximum amount allowed by DSS policy. Plaintiff appealed the denial of the March 11, 2009 Application, and an administrative hearing was held on April 1, 2010. The final decision upholding the denial of Mr. Fortmann's eligibility for benefits due to excess assets held by Mrs. Fortmann (the "community spouse") was issued on August 9, 2010.

Plaintiff, through his conservator James Rubino, re–applied for Medicaid assistance on December 8, 2010. In connection with this new application, Attorney Rubino filed a separate written "assignment" of Plaintiff's support rights. (Ex. E to Pl.'s Loc. R. 56(a)1 Stmt. [Doc. # 47].) Defendant maintains that Plaintiff's assignment is invalid under Connecticut law because it does not meet the requirements for assignment set out in Conn. Gen. Stat. § 17b-285., and thus renders Plaintiff ineligible for the Medicaid medical benefits he seeks.

## II. Statutory Provisions at Issue

Medicaid is a joint state and federal program for funding the cost of medical care for "needy persons," and participating states must develop plans "'containing reasonable standards . . . for determining eligibility for and the extent of medical assistance' within boundaries set by the Medicaid statute and the Secretary of Health and Human Services." *Wisconsin Dep't of Health & Family Servs. v. Blumer*, 534 U.S. 473, 479 (2002) (quoting *Schweiker v. Gray Panthers*, 453 U.S. 34, 36–37 (1981)).

**A. Federal Statutory Provisions**

Section 1396a of the Federal Medicaid Statute, entitled "State Plans for Medical Assistance," requires that a state plan for medical assistance must "provide for mandatory assignment of rights of payment for medical support and other medical care owed to recipients, in accordance with section 1396k of this title." 42 U.S.C. § 1396a(a)(1)(45).

Section 1396k provides,

> (a) For the purpose of assisting in the collection of medical support payments and other payments for medical care owed to recipients of medical assistance under the State plan approved under this subchapter, a State plan for medical assistance shall—
>
> (1) provide that, as a condition of eligibility for medical assistance under the State plan to an individual who has the legal capacity to execute an assignment for himself, the individual is required—
>
> (A) to assign the State any rights, of the individual or of any other person who is eligible for medical assistance under this subchapter and on whose behalf the individual has the legal authority to execute an assignment of such rights, to support (specified as support for the purpose of medical care by a court or administrative order) and to payment for medical care from any third party.

42 U.S.C. § 1396k.

The Medicare Catastrophic Coverage Act of 1988 ("MCCA"), 42 U.S.C. § 1396r-5, was enacted in response to two separate "unintended consequences" of the original Federal Medicaid plan, as Congress found that "[m]any community spouses were left destitute by the drain on the couple's assets necessary to qualify the institutionalized spouse for Medicaid," and "[c]onversely, couples with ample means could qualify for assistance when their assets were held solely in the community spouse's name." *Wisconsin Dep't of Health & Family Servs.*, 534 U.S. at 480. In enacting the MCCA, "Congress sought to protect community spouses from 'pauperization' while preventing financially

secure couples from obtaining Medicaid assistance," and "[t]o achieve this aim, Congress installed a set of intricate and interlocking requirements with which States must comply in allocating a couple's income and resources." *Id.*

Thus, the MCCA addresses the conditions under which a community spouse's assets may factor into an institutionalized spouse's initial Medicaid eligibility determination, and provides that "all the resources held by either the institutionalized spouse, community spouse, or both, shall be considered to be available to the institutionalized spouse" as part of the eligibility determination. *See* 42 U.S.C. § 1396r-5(c)(2). Section 1396r-5 "supersedes other provisions" that are inconsistent with its provisions, and provides detailed rules for treatment of income between the community spouse and institutionalized spouse at the time of the institutionalized spouse's institutionalization. *See* 42 U.S.C. § 1396r-5(c).

Section 1396r-5 also contemplates the situation in which an institutionalized spouse has "assigned" his or her support rights to the State, and in such situations, the institutionalized spouse shall not be deemed ineligible "by reason of resources" of the community spouse:

> (3) Assignment of support rights
>
> The institutionalized spouse shall not be ineligible by reason of resources determined under paragraph (2) to be available for the cost of care where—
>
> (A) the institutionalized spouse has assigned to the State any rights to support from the community spouse;
>
> (B) the institutionalized spouse lacks the ability to execute an assignment due to physical or mental impairment but the State has the right to bring a support proceeding against a community spouse without such assignment; or

> (C) the State determines that denial of eligibility would work an undue hardship.

42 U.S.C. § 1396r-5(c)(3).

**B. Connecticut's Institutionalized Spouse Assignment Statute**

Connecticut General Statute section 17b-285 sets out the operative assignment of support rights contemplated under § 1396r-5(c)(3), i.e., the "Assignment of spousal support of an institutionalized person or person in need of institutional care":

> Notwithstanding any provision of the general statutes, an institutionalized person or person in need of institutional care who applies for Medicaid may assign to the Commissioner of Social Services the right of support derived from the assets of the community spouse of such person but only if (1) the assets of the institutionalized person or person in need of institutional care do not exceed the Medicaid program asset limit; and (2) the institutionalized person or person in need of institutional care cannot locate the community spouse; or the community spouse is unable to provide information regarding his or her own assets. If such assignment is made or if the institutionalized person or person in need of institutional care lacks the ability to execute such an assignment due to physical or mental impairment, the commissioner may seek recovery of any medical assistance paid on behalf of the institutionalized person or person in need of institutional care up to the amount of the community spouse's assets that are in excess of the community spouse protected amount as of the initial month of Medicaid eligibility.

**C. Agency Interpretations of Assignment of Support Rights**

The Center for Medicaid and Medicaid Services ("CMS") discusses "assigned support rights" for purposes of determining Medicaid eligibility and directs a state agency to "assess your own state laws to determine what laws give rise to support rights." (Ex. C-12 to Def.'s 56(a)1 Stmt. [Doc. # 50-1] § 3261.) CMS defines "assigned support rights" as allowing a state to "go against community spouses for reimbursement of some or all of the medical care provided to institutional spouses." (*Id.*)

In 1994, the HCFA, which is now CMS, Regional Administrator for Region IV wrote a letter to the North Carolina Medicaid Director, indicating that the informal opinion of HCFA was that the assignment of support rights under the § 1396r-5(c) "should not be interpreted as a means to avoid the obligation of applying the spousal impoverishment provisions of the law but rather as an exception." (Ex. C–10 to Def.'s 56(a)1 Stmt.) The letter continues:

> These support rights are not defined in section 1924 [1396r-5(c)(3)] since the rights of an institutionalized spouse to receive support from the community spouse are governed by state law. This exception should only be applied when the right to a specified amount of support in the form of income or resources, or both, due to an institutionalized spouse from a community spouse has been determined by a court of competent jurisdiction. *Since these general support statutes are governed by state law, the applicability of this exception will be predicated on state law.*

(*Id.* at 1–2 (emphasis added).)

## III. Discussion[1]

Defendant advances three arguments in support of his motion for summary judgment: first, that § 1396r-5(c) supercedes the general assignments provisions of §§ 1396a(a)(1)(45) and 1396k; second, that under the Second Circuit's ruling in *Morenz*, assignability is a question of state law; and third, that Plaintiff's Complaint contains no preemption claims, and in any event, neither §§ 1396a(a)(1)(45) nor 1396k provide for private rights of action. Defendant also maintains that if the Court were to consider

[1] "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When considering a motion for summary judgment, the Court may consider depositions, documents, affidavits, interrogatory answers, and other exhibits in the record. Fed. R. Civ. P. 56(c).

Plaintiff's conflict preemption argument, Conn. Gen. Stat. § 17b-285 does not, in fact, conflict with any of the federal statutory provisions.

Plaintiff's cross–motion argues that Conn. Gen. Stat. § 17b-285 as amended in the wake of *Morenz* is invalid under the rules of conflict preemption because Defendant cannot comply with the mandate of §§ 1396a(a)(1)(45) and 1396k and with the requirements of § 17b-285; that Plaintiff must prevail under the Second Circuit's decision in *Morenz v. Wilson-Coker*, 415 F.3d 230 (2d Cir. 2005), recognizing the right of the institutionalized spouse to receive Medicaid under the doctrine of spousal refusal; and that Plaintiff has other grounds for relief, such as the general assignment of support rights statute, Conn. Gen. Stat. § 46b-215. Plaintiff requests attorney's fees for the adjudication of this matter.

**A. *Morenz* Decisions**

The two *Morenz* decisions are the only federal court decisions to address the issue of the doctrine of spousal refusal and the assignability of support rights under the federal Medicaid and Connecticut statutory regimes, and thus were a central focus of the parties' arguments. *See Morenz v. Wilson–Coker ("Morenz I")*, 321 F. Supp. 2d 398 (D. Conn. 2004); *Morenz v. Wilson-Coker ("Morenz II")*, 415 F.3d 230 (2d Cir. 2005). At oral argument, both counsel agreed that the Connecticut Legislature had amended its assignment rights statute for institutionalized persons following, and in response to, the Second Circuit's *Morenz* decision. As such, the Court has carefully considered the reasoning in the district and Second Circuit decisions pertaining to the assignment of support rights and the doctrine of spousal refusal in relation to the legislative amendment of § 17b-285.

### 1. District Court Ruling

*Morenz* bears strong similarity to this case: like Mr. Fortmann, Mr. Morenz, the institutionalized spouse, purported to assign his support rights to the state of Connecticut, and his wife, the community spouse, was clear that she was refusing to pay for his medical expenses, although their combined assets exceeded the statutory Community Spouse Resource Allowance ("CSRA") ceiling. However, at the time of *Morenz I*, the operative provision of the Connecticut General Statutes, § 17b-285, was different than the current version, and provided:

> An institutionalized person or person in need of institutional care who applies for Medicaid *shall assign* to the Commissioner of Social Services the right of support derived from the assets of the spouse of such person, *provided the spouse of such person is unwilling or unable to provide the information necessary* to determine eligibility for Medicaid. If such applicant lacks the ability to execute an assignment due to physical or mental impairment, the commissioner may bring a support proceeding against such applicant's spouse without such assignment.

Conn. Gen.Stat. § 17b-285 (2005) (emphasis added).[2]

The district court noted that "states choosing to adopt Medicaid have 'significant discretion to design [Medicaid] programs' as long as those programs are 'consistent with federal law,'" *Morenz I*, 321 F. Supp. 2d at 402 (citing *A.K. v. Division of Medical Assistance*, 350 N.J. Super. 175, 179 (2002)), and that "states can implement Medicaid as they see fit as long as state laws and regulations do not conflict with their federal counterparts." *Id.* Considering the State Medicaid Manual, and the spousal refusal provision of 42 U.S.C. 1396r-5(c)(3), the court reasoned that, "in order for Wilson–Coker

[2] The significant change in the language is that today's provision states that an institutionalized person "may assign . . . *but only if*," while the version of the statute at the time of Mr. Morenz's assignment stated that an institutionalized person "in need of institutional care . . . *shall assign*."

to avoid this federal statute and the DHHS regulations, she must show that Connecticut law places limits on the permissible assignment of rights, either broadly or with reference to the Morenzes' particular situation." *Id.* at 403.

Applying Connecticut's principles of statutory interpretation requiring examination of the plain meaning of the statutory language, the district court concluded that Conn. Gen. Stat. 17b-285 permitted Mr. Morenz to assign his support rights in the manner that he had. *Id.* In reaching this conclusion, the court reasoned that under the operative statutory language, "[t]he Connecticut statute and the DSS regulation describe circumstances in which an institutionalized spouse 'shall' assign or 'must' assign rights to the DSS, but neither limits the circumstances under which an institutionalized spouse 'may' assign such rights," i.e., the circumstances under which Mr. Morenz had chosen to assign his support rights to the state. *Id.* [3] Concluding that Connecticut's statute did not place limits on the permissible assignment of rights, and that Mr. Morenz had executed a valid assignment under § 17b-285, the District Court granted summary judgment to the Morenzes. *Id.*

The court also recognized that:

> Wilson–Coker understandably bemoans the "pay and chase" system this situation creates, under which the State must expend scarce resources pursuing funding from community spouses whose resources exceed the Medicaid threshold. Paying and chasing wastes funds set aside for those in need, and embroils the community spouse in litigation with the State. Still, it is axiomatic that the obligation of the court is to "take statutes as we find

[3] *Morenz I* also noted that "[e]lsewhere in Connecticut General Statutes, Title 17b, when the Connecticut legislature has seen fit to strictly limit the application of state law to particular circumstances, it has used the phrase "only if." *Id.* (citing Conn. Gen. Stat. § 17b–271 ("An agreement with the Commissioner of Social Services under section 17b–267 may be terminated . . . (2) by the Commissioner of Social Services . . . only if he finds . . . .")). *Id.* at 403. As discussed *supra*, the legislature amended § 17b-285 to include this "only if" language.

> them, guided, if ambiguity appears, by legislative history and statutory purpose." . . . In the absence of ambiguity in either the federal or state statutes, I have no alternative but to grant summary judgment in favor of the Morenzes.

*Id.* at 407.

**2. Second Circuit Decision**

The Second Circuit affirmed the district court's grant of summary judgment for the Morenzes, confirming that Mr. Morenz had made a valid assignment under the former § 17b-285. The court noted that the provisions of the former § 17b-285 "could not be less ambiguous," 415 F.3d at 234, and in rejecting the defendant State of Connecticut's interpretation of its statute, the court reasoned, "[b]y using the word 'shall,' the statute constitutes a mandate to institutionalized Medicaid applicants whose spouses have not provided information, but it does not by its terms limit the circumstances under which an institutionalized applicant *may* assign support rights." 415 F.3d at 236 (emphasis in original).

Though *Morenz II* construed an earlier version of Conn. Gen. Stat. § 17b-285, nothing in the Second Circuit's opinion suggests that greater state limitations on permissible assignments of rights would conflict with federal law. Indeed, the court noted, "[a]lthough federal law prohibits a community spouse's assets from preventing an institutionalized spouse from becoming eligible for Medicaid when all support rights are assigned to the State, whether a particular assignment of support rights is valid for purposes of § 1396r-5(c)(3)(A) is *a question of state law*." *Id.* at 235 (emphasis added).

**B. Conflict Preemption**

Conflict pre-emption, which Plaintiff maintains is dispositive of both summary judgment motions, "occurs when compliance with both state and federal law is

impossible, or when the state law stands as an obstacle to the accomplishment and execution of the full purposes and objective[s] of Congress," *United States v. Locke*, 529 U.S. 89, 109 (2000) (internal citations and quotation marks omitted). State law is in "irreconcilable conflict" with federal law, and hence preempted by federal law, when compliance with the state statute would frustrate the purposes of the federal scheme. *Pacific Capital Bank, N.A. v. Connecticut*, 542 F.3d 341, 351 (2d Cir. 2008) (citing *Rice v. Norman Williams Co.*, 458 U.S. 654, 659 (1982)).

In analyzing Plaintiff's claim of conflict preemption, the Court presumes that the state law is constitutional. *Lockport v. Citizens for Community Action at Local Level, Inc.*, 430 U.S. 259, 272 (1977). Where, as with Medicaid, "coordinate state and federal efforts exist within a complementary administrative framework, and in the pursuit of common purposes, the case for federal pre–emption [is] a less persuasive one." *New York State Dep't of Social Services v. Dublino*, 413 U.S. 405, 421 (1973); *see also Pharm. Research & Mfrs. Of Am. v. Meadows*, 304 F.3d 1197, 1206 (11th Cir. 2002) ("Medicaid is one of several cooperative state-federal program covered by the Social Security Act, and the Supreme Court has suggested that preemption for these types of programs may be difficult to establish.").

In ruling on the Plaintiff's motion for preliminary injunction, this Court focused on the general Medicaid provisions §§ 1396a(a)(1)(45) and 1396k, and concluded at that initial stage that there appeared to be a likelihood of success on the merits on the issue of irreconcilable demands of both the federal general assignability provisions *and* the Connecticut statutes limiting assignments of support rights of institutionalized persons, and that the balance of hardships weighed in favor of maintaining the status quo to permit Mr. Fortmann to remain in his nursing home. Mr. Fortmann is now deceased and

a fuller record and more fulsome briefing of the conflict preemption issue and the *Morenz* decisions have been provided. Based on this developed record, and the thoughtful analyses of counsel in briefing and at oral argument, the Court concludes that the requirements of Conn. Gen. Stat. § 17b-285 do not conflict with the federal Medicaid provisions of § 1396r-5 that "supercede any other provision of this title . . . which is inconsistent with them" for the following reasons.

*Morenz II* explained how the generalized assignment requirement under § 1396k interfaced with the more specific spousal assignment provision, 1396r-5(c)(3), noting that "whether a particular assignment of support rights is valid for purposes of § 1396r-5(c)(3)(A) is a question of state law," 415 F.3d at 235, and that

> [i]t is this fact that enables the two requirements of support rights assignments to be comfortably consistent. The first—the federal requirement that such an assignment be made under § 1396k(a)(1)(A)—can be read as mandating no more than that the institutionalized spouse make what, on its face, would seem to be a valid assignment. The second—one of three conditions precluding state denial of eligibility in § 1396r-5(c)(3)—presupposes an assignment that is valid *under state law*.

*Id.* at 235 n.4 (emphasis in original). Applying *Morenz II*'s interpretation of § 1396k(a)(1)(A) as "mandating no more than that the institutionalized spouse make . . . a valid assignment" and conclusion that MCCA's § 1396r-5(c)(3) presupposes the existence of valid assignments under state law, the Court looks to Conn. Gen. Stat. § 17b-285 for the definition of what constitutes a valid assignment for an institutionalized spouse under Connecticut law. Using this approach, it is evident that these statutory provisions can co-exist as written, and that section 17b-285, even as amended in the wake of the *Morenz* decisions, does not "stand as an obstacle to the accomplishment and execution of the full purposes" of the federal Medicaid provisions. *Locke*, 529 U.S. at 109. In effect, the

definition of assignment of spousal support rights for institutionalized persons provided in § 17b-285 fills the gaps left by sections 1396k and 1396r-5.

The State Medicaid Manual ("SMM") of the Centers for Medicare & Medicaid Services ("SMS"), relied upon in both *Morenz I and II*, provides support for this conclusion. The manual's directives are "official interpretations of the law and regulations, and, as such, are binding on Medicaid State agencies." (SMM, Ex. C-11 to Def.'s 56(a)1 Stmt. at B.1.) The SMM describes "assigned support rights":

> [A] reasonable definition is: An assignment of a support right allowing you to go against community spouses for reimbursement of some or all of the medical care provided to institutional spouses. *You must assess your own State laws to determine what laws give rise to support rights* and the amount of medical costs community spouses are asked to cover and whether you are limited to seeking support in the amount community spouses' resources exceed spousal allowances.

(SMM § 3261 (emphasis added).)

The SMM was characterized by the Second Circuit as "precisely the kind of informal interpretation that warrants some significant measure of deference," *Morenz II*, 415 F.3d at 235, and the CMS is considered to be "a highly expert agency" in cases involving Medicare or Medicaid, *Sai Kwan Wong v. Doar*, 571 F.3d 247, 260 (2d Cir. 2009) (citing *Estate of Landers v. Leavitt,* 545 F.3d 98, 107 (2d Cir. 2008) ("CMS's interpretation is entitled to a great deal of persuasive weight.")); *see also Cmty. Health Ctr. v. Wilson-Coker*, 311 F.3d 132, 138 (2d Cir. 2002) ("As the Supreme Court recently noted, even relatively informal HCFA (now CMS) interpretations, such as letters from regional administrators, 'warrant[ ] respectful consideration' due to the complexity of the statute and the considerable expertise of the administering agency." (quoting *Wis. Dep't of Health & Fam. Servs.*, 534 U.S. at 479)).

The fact that the SMM directs states to "assess their own State laws" in order to determine what conditions must be met to effectuate support rights assignments logically implies that it is anticipated, and thus permissible, for a state to impose limitations on the assignments of support rights in the institutionalized spouse context. In light of the Second Circuit's recognition in *Morenz II* that "the two requirements of support rights assignments [are] comfortably consistent," 415 F.3d at 235 n.4, the SMM's instructions on assigned support rights, and the "presumption of constitutionality to which every duly enacted state and federal law is entitled," *Lockport*, 430 U.S. at 272, particularly in the context of Medicaid's "cooperative federalism," *Wisconsin Dep't of Health & Fam. Servs.*, 534 U.S. at 495, the Court rejects Plaintiff's position that § 17b-285 is preempted by federal law.[4]

**C. Whether Plaintiff Has Made a Valid Assignment Under Connecticut Law**

Having concluded that Conn. Gen. Stat. § 17b-285 is not preempted by federal law, the Court next must consider whether Plaintiff made a valid assignment of his spousal support rights to the state under the applicable state law for assignment of spousal support rights for institutionalized persons, i.e., § 17b-285, such that he should be deemed eligible for Medicaid. As amended in the wake of the *Morenz* opinions, § 17b-285 establishes two requirements that must be met for an assignment to be valid: "an institutionalized person . . . *may assign* . . . to the Commissioner of Social Services the

[4] In light of the Court's conclusion that § 17b-285 is not preempted, the Court does not address Defendant's arguments that Plaintiff lacks a private cause of action to assert his preemption argument (*see* Def's Mem. Supp. [Doc. # 50–2] at 14–28).

right of support derived from the assets of the community spouse of such person *but only if*":

> (1) the assets of the institutionalized person or person in need of institutional care do not exceed the Medicaid program asset limit; *and* (2) the institutionalized person or person in need of institutional care cannot locate the community spouse; or the community spouse is unable to provide information regarding his or her own assets.

Conn. Gen. Stat. § 17b-285 (emphasis added). Here, the second prong has not been satisfied by Plaintiff, as the record is undisputed that Mrs. Fortmann's location in New Jersey is known *and* that she is able to provide information on her assets. Thus, Plaintiff has not made a valid assignment under the operative Connecticut statute.

Plaintiff argues that even if the Court finds his assignment to be invalid under §17b-285, he was entitled to assign his rights under Conn. Gen. Stat. § 46b-215, Connecticut's general assignment of support rights statute. Section 46b-215, "Relatives Obliged to Furnish Support," states:

> (a) (1) The Superior Court or a family support magistrate may make and enforce orders for payment of support against any person who neglects or refuses to furnish necessary support to such person's spouse or a child under the age of eighteen or as otherwise provided in this subsection, according to such person's ability to furnish such support, notwithstanding the provisions of section 46b-37. If such child is unmarried and a full-time high school student, such support shall continue according to the parents' respective abilities, if such child is in need of support, until such child completes the twelfth grade or attains the age of nineteen, whichever occurs first.

Plaintiff asserts that the limitation on assignments in §17b-285 does not apply to support rights under § 46b-215, and thus, the State is authorized to commence support proceedings against Mrs. Fortmann under § 46b-215, such that he should not be deemed ineligible for Medicaid coverage.

The Court determined in its preliminary injunction ruling that Connecticut's general assignment of support rights provision § 46b-215 would not apply here because the principle governing statutory interpretation requires, where possible, the application of the more specific statute.[5] Conn. Gen. Stat. § 46b-215 does not bear on the circumstances of this case, where Plaintiff only sought to exclude from his *eligibility determination for Medicaid* consideration of Mrs. Fortmann's resources. Such circumstances are addressed by § 17b-285. Therefore, § 46b-215 is inapplicable here, and Plaintiff's motion for summary judgment is denied on this ground.

## IV. Conclusion

For the reasons discussed above, the Court concludes that Conn. Gen. Stat. § 17b-285 is not preempted by 42 U.S.C. §§ 1396a(a)(45) or 1396k, given that § 1396r-5(c)(3) contemplates that a state will provide its own definitions for the assignment of spousal support rights in the institutionalized spouse context. *See Morenz II*, 415 F.3d at 235. Because Plaintiff's assignment of spousal support rights was invalid under § 17b-285, Defendant's motion [Doc. # 50] for summary judgment is GRANTED, and Plaintiff's motion [Doc. # 46] is DENIED. The Clerk is directed to close the case.

IT IS SO ORDERED.

/s/

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 31st day of July, 2013.

[5] Indeed, Plaintiff concedes that this issue has already been addressed and ruled upon by the Court, but notes that he "briefly" raised the § 46b-215 issue again "in order to preserve issues for the record." (Pl.'s Mem. Supp. [Doc. # 48] at 4.)